UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LYNNE M. W.,

                                                Plaintiff,

v.                                                              1:21-cv-639 (GTS/TWD)

KILOLO KIJAKAZI,
Acting Commissioner of Social Security

                                                Defendant.
_____

APPEARANCES:                              OF COUNSEL:
MELTZER, FISHMAN,                        EDWARD J. MADIGAN
MADIGAN & CAMPBELL
  *Counsel for Plaintiff*
225 Broadway, Suite 2605
New York, NY 10007

SOCIAL SECURITY ADMINISTRATION          KEVIN MICHAEL PARRINGTON, ESQ.
OFFICE OF THE GENERAL COUNSEL           NICOLE BOUDREAU, ESQ.
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

Lynne M. W. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the Commissioner of Social Security's ("Commissioner") denial of her request

for Social Security Disability Insurance benefits.  (Dkt. No. 1.)  Plaintiff did not consent to the

disposition of this case by a Magistrate Judge.  (Dkt. No. 5.)  Both parties filed briefs, which the

Court treats as motions under Federal Rule of Civil Procedure Rule 12(c) in accordance with

General Order 18.  (Dkt. Nos. 3, 9, 16, 17.)  For the reasons set forth below, the undersigned

recommends that the Court deny Plaintiff's motion and affirm the Commissioner's decision.

## I.    BACKGROUND

Plaintiff was born in December of 1962, completed two years of college in 1994, and

worked for 36 years as a nurse.  (T. at 31, 48, 220, 248-51.[1])  On April 24, 2018, Plaintiff

stopped working due to various impairments.  *Id.* at 32, 219.  Plaintiff filed for Social Security

Disability Insurance benefits on April 2, 2019, claiming an onset date of April 24, 2018, and

disability due to: (i) "spinal stenosis cervical spine-status post spinal fusion," (ii) "right disc

herniation," (iii) "degenerative disc disease with stenosis," (iv) "chronic severe asthma and

sinusitis," (v) "SP right total nephrectomy," (vi) "SP surgery of vulva for recurrent squamous

cell CA," (vii) "[t]otal abdominal hysterectomy with partial vulvectomy (CA)," (viii) "right wrist

de Quervain's release," (ix) "anxiety and panic attacks," and (x) "fatigue."  *Id.* at 63-64, 195,

219.

The Commissioner denied Plaintiff's initial application and her request for

reconsideration.  *Id.* at 97, 103-105.  Plaintiff subsequently requested a hearing before an

Administrative Law Judge ("ALJ").  *Id.* at 117.  ALJ Andrew J. Soltes, Jr. held a hearing on May

21, 2020, and Plaintiff testified along with Vocational Expert ("VE") Angela Eskandar.  *Id.* at

24-63.  The ALJ denied Plaintiff's claim for benefits on June 18, 2020, and the Appeals Council

denied Plaintiff's request for review on April 5, 2021.  *Id.* at 1-3, 10-18.  Plaintiff now seeks this

Court's review.  (Dkt. No. 1.)

---

[1] The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative
Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein
will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns.
Page references to other documents identified by docket number are to the page numbers
assigned by the Court's CM/ECF electronic filing system.

## II.    STANDARD OF REVIEW

In reviewing a final decision of the Commissioner, courts must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision.  *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987); *Brennan v. Colvin*, No. 13-CV-6338 (AJN) (RLE), 2015 WL 1402204, at *10 (S.D.N.Y. Mar. 25, 2015).[2] "Failure to apply the correct legal standards is grounds for reversal."  *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)). Accordingly, the reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied.  *Johnson*, 817 F.2d at 985; *see also Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) ("Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations.").

If the ALJ applied the correct legal standards, the reviewing court must determine whether the ALJ's decision is supported by substantial evidence.  *Tejada*, 167 F.3d at 773; *Bowen*, 817 F.2d at 985.  "Substantial evidence means more than a mere scintilla."  *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*; *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the ALJ's finding as to any fact is supported by substantial evidence, it is

---

[2] "Since the standards for determination of disability and for judicial review in cases under 42 U.S.C. § 423 and 42 U.S.C. § 1382c(a)(3) are identical, decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983).  Moreover, "[t]he regulations that govern the two programs are, for today's purposes, equivalent."  *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019).  Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted.  *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

conclusive.  42 U.S.C. § 405(g); *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995).  In a similar

vein, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's

conclusion must be upheld."  *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022).  "The court,

however, will not defer to the Commissioner's determination if it is the product of legal

error."  *Hopson v. Comm'r of Soc. Sec.*, No. 20-CV-6528 (LTS) (RWL), 2022 WL 1749930, at

*2 (S.D.N.Y. Jan. 12, 2022).

     When inadequacies in the ALJ's decision frustrate meaningful review of the substantial

evidence inquiry, remand may be appropriate.  *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir.

2019); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).  Remand may accordingly be appropriate

where the ALJ has failed to develop the record, *Klemens v. Berryhill*, 703 F. App'x 35, 38 (2d

Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999), adequately appraise the weight or

persuasive value of witness testimony, *Estrella*, 925 F.3d at 98; *Burgess v. Astrue*, 537 F.3d 117,

130-31 (2d Cir. 2008), or explain his reasoning, *Klemens*, 703 F. App'x at 36-38; *Pratts*, 94 F.3d

at 39.

## III.  DISCUSSION

     The ALJ concluded Plaintiff was not disabled within the meaning of the Social Security

Act because she was capable of performing past relevant work.  (T. at 17.)  Plaintiff claims

remand is nonetheless appropriate because: (i) her impairments meet or equal listings 1.15, 1.16,

and 11.08; (ii) the ALJ failed to explain why he discounted aspects of the VE's testimony; and

(iii) the ALJ should have called a medical expert.  (*See* Dkt. Nos. 9, 16.[3])  The Commissioner

---

[3] Plaintiff filed two briefs in this matter.  (*See* Dkt. Nos. 9, 12.)  The first is styled as a
"MOTION for Summary Judgment" on the docket, but according to Plaintiff, was submitted "in
support of her motion for judgment on the pleadings."  (*See* Dkt. No. 9; Dkt. No. 9-1 at 2.)  The
second brief is a copy of the first brief, but it contains the pages that were missing from the initial

contends: (i) substantial evidence supports the ALJ's listings determination, (ii) the ALJ properly considered the VE testimony, and (iii) there was no need for the ALJ to obtain medical opinion testimony. (Dkt. No. 17 at 5-13.)

For the following reasons, the undersigned concludes substantial evidence supports the ALJ's listings determination. (*See* T. at 14.) The undersigned further concludes the ALJ properly considered the VE testimony and did not err in failing to call a medical expert at the hearing. *See id.* at 14-17. The undersigned accordingly recommends that the Court deny Plaintiff's motion and affirm the Commissioner's decision.

### A.    The ALJ's Listings Determination

The ALJ concluded Plaintiff's severe impairments included "degenerative disc disease status post fusion surgery in 2010, history of right nephrectomy in 2011, and asthma." (T. at 12.) However, the ALJ concluded Plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, subpart P, Appendix 1. *Id.* at 14. In particular, the ALJ considered listings 1.02 and 1.04. *See id.*

As to listing 1.02, the ALJ concluded "the specified criteria required of the listing was not demonstrated by the available medical evidence." *See id.* He explained, "[i]n this case, the evidence does not demonstrate that [Plaintiff] has the degree of difficulty in performing fine and gross motor movements." *See id.* Similarly, the ALJ concluded "the medical evidence does not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required under listing 1.04 for disorders of the spine." *Id.* The ALJ further explained

---

filing. (*Compare* Dkt. No. 9 *with* Dkt. No. 16; *see also* Dkt. No. 15.) Pursuant to General Order 18, the undersigned treats Plaintiff's briefs as motions for judgment on the pleadings.

there was "no evidence that [Plaintiff's] back disorder has resulted in an inability to ambulate effectively."  *Id.*

Plaintiff does not challenge the ALJ's evaluation of listings 1.02 and 1.04.  (*See* Dkt. Nos. 9, 16.)  Rather, she claims the ALJ erred in failing to evaluate the applicability of listings 1.15, 1.16, and 11.08.  (*See* Dkt. No. 16 at 9-15.[4])  Without explaining which medical records satisfy which elements of each listing, Plaintiff claims her "medical records and reports support" the conclusion that she "met or equaled" listings 1.15, 1.16, and 11.08.  (*See* Dkt. No. 16 at 9-15.)  The Commissioner contends listing 11.08 was "not relevant" because the evidence showed "no indication of a spinal cord injury . . . or such paralysis."  (Dkt. No. 17 at 5-6.)  The Commissioner further contends it is wrong for Plaintiff to "rel[y] on listings 1.15 and 1.16, which were a result of a revision in this listings regulations, effective April 2021 — i.e., after the ALJ's decision in this case."  *Id.* at 6.

The undersigned agrees with Commissioner that the ALJ did not err in failing to evaluate Plaintiff's impairments under listings 1.15 and 1.16, and correctly concluded listing 11.08 was inapplicable.  (*See* T. at 14.)  Although Plaintiff does not challenge the ALJ's evaluation of listings 1.02 and 1.04, the undersigned nonetheless concludes substantial evidence supports the ALJ's listings determination.  *See id.*; *see also Tejada*, 167 F.3d at 773.

_____

[4] The headings in Plaintiff's briefs refer to listings 1.16, 1.21, and 11.08, but her arguments only address listings 1.15, 1.16, and 11.08.  (*See* Dkt. Nos. 9, 16.)  To the extent Plaintiff sought to make an argument about the ALJ's treatment of listing 1.21, she has failed to do so.  *See generally id.*  Moreover, listing 1.21 is not applicable here, as it was not effective until April, 2, 2021, after the ALJ issued his decision in this matter.  (*See* T. at 10-18; *see also* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78164-01, 2020 WL 7056412, at *78164, 78181 (Dec. 3, 2020); *see, e.g.*, *Brandee C. v. Kijakazi*, No. 1:20-CV-00129 (CMR), 2022 WL 875942, at *2 (D. Utah Mar. 23, 2022) ("Listings 1.16 and 1.18 were not in effect at the time the ALJ decided this case and are therefore inapplicable").)

### 1.    Legal Standard

"To determine if a claimant suffers from a qualifying disability under the Social Security Act, the Commissioner follows a five-step, sequential evaluation process." *Schafenberg v. Saul*, 858 F. App'x 455, 456 (2d Cir. 2021); *see also* 20 C.F.R. § 404.1520(a)(4); SSR 86-8, 1986 WL 68663, at *2-4 (Jan. 1, 1986). The only step at issue here, the third step, requires the Commissioner to consider whether any of the claimant's severe impairments meet or equal the criteria of any impairments listed in Appendix 1 of the regulations. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); *see also Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009); SSR 17-2P, 2017 WL 3928306, at *2 (Mar. 27, 2017). A claimant "has the burden of proof at step three to show that her impairments meet or medically equal a Listing." *Rockwood*, 614 F. Supp. 2d at 272; *see generally Sczepanski v. Saul*, 946 F.3d 152, 158 (2d Cir. 2020) ("The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at steps one through four.").

"For a claimant to show that [her] impairment [meets] a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see also* 20 C.F.R. § 404.1520(d). "An impairment that manifests only some of those criteria, no matter how severe, does not qualify." *Sullivan*, 493 U.S. at 530. Alternatively, a claimant can show that her impairment medically equals a listing by providing medical evidence showing the impairment is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a); *see also Sullivan*, 493 U.S. at 531; SSR 17-2P, 2017 WL 3928306, at *2 ("An impairment is medically equivalent to a listed impairment if it is at least equal in severity and duration to the criteria of any listed impairment."). Medical equivalence must be based on "medical findings." *See Sullivan*, 493 U.S. at 531; *see also Wetzel v. Berryhill*, 783 F. App'x 44,

46-47 (2d Cir. 2019); SSR 17-2P, 2017 WL 3928306, at *3-4; SSR 86-8, 1986 WL 68636, at *4. A claimant's own allegations, without more, are insufficient to establish that her impairments medically equaled a listing.  20 C.F.R. § 404.1529(d)(3); *see also* SSR 86-8, 1986 WL 68636, at *4.

"[T]he ALJ must consider all relevant evidence in the case record in determining whether a listing has been met or equaled under step three." *Brittany F. v. Comm'r of Soc. Sec. Admin.*, No. 1:18-CV-1365 (ATB), 2020 WL 838076, at *4 (N.D.N.Y. Feb. 19, 2020); *see also* 20 C.F.R. § 404.1526(c); SSR 17-2P, 2017 WL 3928306, at *3-4.  "Additionally, the ALJ is required to articulate the specific reasons justifying his decision that the claimant does or does not meet the relevant listing." *Brittany F*, 2020 WL 838076, at *4; *see generally* SSR 17-2P, 2017 WL 3928306, at *4 (discussing the ALJ's "Articulation requirements").  "It is well settled that where the claimant's symptoms as described by medical evidence appear to match those described in the Listings, the ALJ must explain a finding of ineligibility based on the Listings." *Brittany F*, 2020 WL 838076, at *4 (collecting cases).

"If the ALJ failed to adequately address or explain why he rejected substantial conflicting record evidence at step three, he will have committed legal error." *Elizabeth G. v. Comm'r of Soc. Sec.*, No. 8:21-CV-411 (CFH), 2022 WL 1689551, at *14 (N.D.N.Y. May 26, 2022); *see also* *Cepeda v. Berryhill*, No. 18-CIV-7304 (LGS) (SLC), 2019 WL 7483937, at *14 (S.D.N.Y. Dec. 12, 2019), *report and recommendation adopted*, 2020 WL 58236 (S.D.N.Y. Jan. 6, 2020). "Nonetheless, the absence of an express rationale does not prevent [the Court] from upholding the ALJ's determination . . . [if] portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence." *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982); *see also Solis v. Berryhill*, 692 F. App'x 46, 48 (2d Cir. 2017); *Rockwood*, 614

F. Supp. 2d at 273.  Remand may accordingly be appropriate where the ALJ failed to address conflicting evidence, or substantial evidence does not support the ALJ's step three determination. *See, e.g.*, *Bell v. Saul*, No. 20-CV-2392 (MKB), 2021 WL 4248845, at *8 (E.D.N.Y. Sept. 17, 2021) (remanding "for further administrative proceedings, including a fuller explanation of whether Plaintiff has met or equaled Listing 1.04, and addressing the conflicting evidence"); *Holmes v. Saul*, No. 19-CV-2238 (PKC), 2020 WL 3270535, at *5 (E.D.N.Y. June 17, 2020) (remanding where the ALJ failed to address conflicting evidence and substantial evidence did not support the ALJ's decision); *Brittany F*, 2020 WL 838076, at *5 (same).

### 2.    Substantial Evidence Supports the ALJ's Listings Determination

#### i.    *Listings 1.15 and 1.16*

At the outset, the undersigned notes that two of the listings relied on by Plaintiff—listings 1.15 and 1.16—were not in effect at the time the ALJ issued his decision.  *See* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78164-01, 2020 WL 7056412, at *78164, 78179-80 (Dec. 3, 2020) (making rules 1.15 and 1.16 final, and providing that they "will be effective on April 2, 2021").  Upon finalizing listings 1.15 and 1.16, the Commissioner explained that Courts should review the Commissioner's "final decision[] using the rules that were in effect at the time" the Commissioner issued the decision.  *See* 85 Fed. Reg. 78164-01, 2020 WL 7056412, at *78164 n.2.  The ALJ issued his decision on June 18, 2020, but listings 1.15 and 1.16 did not take effect until April 2, 2021.  *Compare id. with* T. at 10-18.  These listings are accordingly inapplicable.  *See, e.g.*, *Bell*, 2021 WL 4248845, at *6 n.5 ("Listing 1.04(A) was replaced by Listing 1.15 effective April 2, 2021.  However, because Plaintiff's claim was brought before that the effective date, the Court applies Listing 1.04 to this case.");  *Brandee C. v. Kijakazi*, No. 1:20-CV-00129 (CMR), 2022 WL 875942, at *2 (D. Utah

Mar. 23, 2022) ("Listings 1.18 and 1.16 only apply to cases decided on or after April 2, 2021.  The ALJ decided this case in 2019 (Tr. 26).  Listings 1.16 and 1.18 were not in effect at the time the ALJ decided this case and are therefore inapplicable.").  Thus, the ALJ did not err in failing to address listings 1.15 and 1.16 because those were not in effect on June 18, 2020, when the ALJ issued his decision.  (*See* T. at 10-18.)

    *ii.*  *Listing 11.08*

   The ALJ did not err in failing to explicitly evaluate listing 11.08 either.  (*See* T. at 14.) "Listing 11.08 concerns spinal cord disorders, which 'may be congenital or caused by injury to the spinal cord.'"  *Whitmore v. Kijakazi*, No. 20-CV-08435 (SN), 2022 WL 976964, at *9 (S.D.N.Y. Mar. 31, 2022) (quoting 20 C.F.R. Pt. 404, subpt. P, App. 1 § 11.00(M)(1)).  The regulations provide that "[m]otor signs and symptoms of spinal cord disorders include paralysis, flaccidity, spasticity, and weakness.'"  20 C.F.R. Pt. 404, subpt. P, App. 1 § 11.00(M)(1).  "To satisfy the requirements of Listing 11.08, a claimant must show: (A) complete loss of function persisting for three consecutive months after the disorder; or (B) disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand from a seated position, balance while standing or walking, or use the upper extremities persisting for three consecutive months after the disorder; or (C) marked limitation in physical functioning and in one or more of the areas of mental functioning, both persisting for three consecutive months after the disorder."  *Whitmore*, 2022 WL 976964, at *9 (quoting 20 C.F.R. Pt. 404, subpt. P, App. 1 §§ 11.08(A)–(C)); *see also Schildwachter v. Berryhill*, No. 17-CV-7277 (VEC)(SN), 2019 WL 1116256, at *5-6 (S.D.N.Y. Feb. 8, 2019), *report and recommendation adopted*, 2019 WL 1115026 (S.D.N.Y. Mar. 11, 2019).  "A complete loss of function is defined as 'a complete lack of motor, sensory, and autonomic function of the affected part(s) of the body.'"  *Whitmore*, 2022

WL 976964, at *9 (quoting 20 C.F.R. Pt. 404, subpt. P, App. 1 § 11.00(M)(2)).  "In contrast, a disorganization of motor function involves the reduction, but not the elimination, of motor, sensory, and autonomic function."  *Id.* (citing 20 C.F.R. Pt. 404, subpt. P, App. 1 § 11.00(M)(3)). Plaintiff failed to demonstrate her impairment met or equaled any of the criteria set forth in Paragraphs A, B, or C of listing 11.08.

  First, substantial evidence indicates Plaintiff did not have a "[c]omplete loss of function . . . persisting for 3 consecutive months."  *See* 20 C.F.R. Pt. 404, subpt. P, App. 1 § 11.08(A). Plaintiff did not have a complete loss of function during her medical evaluation with consultative examiner Kautilya Puri, M.D., and no medical expert identified such a loss of function.  (*See* T. at 73-77 (evaluation of state agency medical consultant D. Brauer, M.D.), 89-93 (evaluation of state agency medical consultant D. Chen, M.D.), 516-20 (evaluation of Dr. Puri).[5])  Plaintiff has failed to identify medical evidence documenting a complete loss of function, and the undersigned has identified no such evidence in Plaintiff's medical records.  (*See generally* Dkt. Nos. 9, 16; T. at 365-508, 523-610.)  Substantial evidence accordingly supports the conclusion that listing 11.08(A) was inapplicable.  (*See* T. at 14; *see, e.g.*, *Whitmore*, 2022 WL 976964, at *9 (concluding "[t]he ALJ correctly determined that Witmore [did] not have a spinal cord disorder as defined by Listing 11.08" because "[t]here [wa]s no evidence in the record indicating that Whitmore ever suffered a complete loss of function caused by spinal injuries as required by 11.08 (A)."); *Schildwachter*, 2019 WL 1116256, at *5 (same).)

  Second, substantial evidence indicates Plaintiff was capable of "stand[ing] from a seated position, balanc[ing] while standing or walking, [and using her] upper extremities."  *See* 20

---

[5] Plaintiff does not challenge the ALJ's evaluation of the medical opinion evidence in this case. (*See* Dkt. Nos. 9, 16.)  The ALJ found Dr. Puri's opinion and the opinions of state agency medical consultants Drs. Brauer and Chen to be "partially persuasive."  (*See* T. at 16.)

C.F.R. Pt. 404, subpt. P, App. 1 § 11.08(B).  During her exam with Dr. Puri on June 13, 2019,

Plaintiff had a normal gait, was capable of walking on her heels and toes and "ris[ing] from [her]

chair without difficulty," and had full range of motion in her shoulders, elbows, forearms, wrists,

hips, knees, and ankles.  (T. at 518.)  Similarly, neither one of the state agency medical

consultants identified an extreme limitation in Plaintiff's ability to "stand up from a seated

position, balance while standing or walking, or use [her] upper extremities."  (*See* T. at 73-77,

89-93; *see generally* 20 C.F.R. Pt. 404, subpt. P, App. 1 § 11.08(B).)  Plaintiff has failed to

identify medical evidence documenting an extreme limitation in these areas, and the undersigned

has identified no such evidence in Plaintiff's medical records.  (*See generally* Dkt. Nos. 9, 16; T.

at 365-508, 523-610.)  Substantial evidence accordingly supports the conclusion that listing

11.08(B) was inapplicable.  (*See* T. at 14; *see, e.g.*, *Whitmore*, 2022 WL 976964, at *9

(upholding the ALJ's 11.08(B) listings determination because there was no "evidence that

Whitmore exhibited an extreme limitation in his ability to stand from a seated position, balance

while standing or walking, or use the upper extremities or a marked limitation in physical

functioning."); *Schildwachter*, 2019 WL 1116256, at *5 (same); *Harmon v. Comm'r of Soc. Sec.*,

No. 17-CV-171 (FPG), 2018 WL 1586750, at *7 (W.D.N.Y. Apr. 2, 2018) (same).)

Finally, substantial evidence indicates Plaintiff had no marked mental limitations.  *See* 20

C.F.R. Pt. 404, subpt. P, App. 1 § 11.08(C).  Consultative examiner Jennifer Ochoa, Psy.D.,

concluded Plaintiff's most severe mental limitations were "[m]ild to moderate limitations

regulating emotions, controlling behavior, and maintaining well-being."  (T. at 510-514.)  Dr.

Ochoa identified no marked mental limitations.  *See id.*  State agency psychological consultants

T. Bruni, Ph.D., and C. Walker, Ph.D., likewise concluded Plaintiff did not have any marked

mental limitations. *See id.* at 71-73 (Dr. Bruni), 87-89 (Dr. Walker).[6])  Substantial evidence accordingly supports the conclusion that listing 11.08(C) was inapplicable.  (*See* T. at 14; *see, e.g.*, *Whitmore*, 2022 WL 976964, at *9 (upholding the ALJ's 11.08(C) listings determination because "neither the treating nor the consultative physicians suggest that Whitmore was impaired in his ability to understand, remember, or apply information, interact with others, concentrate, persist or maintain pace, or adapt and manage himself as contemplated by 11.08(C)."); *Timothy T. v. Kijakazi*, No. 20-CV-1780 (LIB), 2022 WL 1715186, at *6 (D. Minn. Mar. 31, 2022) ("The ALJ did determine that Plaintiff did not have a marked limitation in the areas of mental functioning; therefore, this alone foreclosed the possibility of meeting all of Listing 11.08(C)'s specified criteria.").

In sum, substantial evidence demonstrates Plaintiff did not have a spinal cord disorder as defined by listing 11.08. *See id.*  Plaintiff failed to produce and identify evidence indicating she satisfied paragraphs A, B, or C of listing 11.08.  (*See generally* Dkt. Nos. 9, 16; T. at 67-95, 365-610.)  The ALJ accordingly did not err in concluding listing 11.08 was inapplicable to Plaintiff's case. *See, e.g.*, *Whitmore*, 2022 WL 976964, at *9; *Schildwachter*, 2019 WL 1116256, at *5.

### iii.    Listings 1.02 and 1.04

Substantial evidence supports the ALJ's conclusion that Plaintiff's impairments did not meet or medially equal listings 1.02 or 1.04.  (*See* T. at 14.)  First, as to listing 1.02, substantial evidence supports the ALJ's conclusion that "the specified criteria required of the listing was not demonstrated by the available medical evidence."  *See id.*  Listing 1.02(A) was not satisfied

---

[6] As mentioned above, *supra*, note 5, Plaintiff does not challenge the ALJ's evaluation of the medical opinion evidence in this case.  (*See* Dkt. Nos. 9, 16.)  The ALJ found Dr. Ochoa's opinion and the opinions of the state agency psychological consultants to be persuasive.  (T. at 16.)

because the medical evidence indicated Plaintiff had no issues ambulating.  *See* 20 C.F.R. § Pt.

404, subpt. P, App. 1, 1.02(A); *see, e.g.*, *Figueroa v. Saul*, No. 18-CV-4534 (JLC), 2019 WL

4740619, at *19 (S.D.N.Y. Sept. 27, 2019) ("Although the ALJ did not explicitly discuss specific

reasons, her general conclusion (that Figueroa did not meet Listing 1.02) is supported by

substantial evidence demonstrating that her knee impairment did not result in an inability to

ambulate effectively."); *DiPalma v. Colvin*, 951 F. Supp. 2d 555, 5772 (S.D.N.Y. 2013)

(affirming the ALJ's 1.02 listings determination because "DiPalma did not prove that his knee

impairment impacted his ability to ambulate to the extent required by the Listings.").  Plaintiff

had no issues ambulating during her consultative examination with Dr. Puri, and no state agency

medical consultant identified such an issue.  (T. at 73-77, 89-93, 516-20.)  Moreover, Plaintiff's

medical records suggest she was capable of ambulating.  *See id.* at 391, 396, 402, 426, 429, 431,

433, 436, 440, 492, 494, 525, 527, 549, 559, 586, 596, 599, 603; *accord id.* at 14 (concluding

there was "no evidence" Plaintiff's back disorder "resulted in an inability to ambulate

effectively").

    Listing 1.02(B) was not met either.  Under listing 1.02(B), which applied at the time the

ALJ decided Plaintiff's claim, Plaintiff had to demonstrate "[i]nvolvement of one major

peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in

inability to perform fine and gross motor movements effectively, as defined in 1.00B2c."  20

C.F.R. § Pt. 404, subpt. P, App. 1, 1.02(B) (effective until April 2, 2021).  Subsection

1.00(B)(2)(c), in turn, defined the "[i]nability to perform fine and gross movements" as "an

extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very

seriously with the individual's ability to independently initiate, sustain, or complete activities."

20 C.F.R. § Pt. 404, subpt. P, App. 1, 1.00(B)(2)(c) (effective until April 2, 2021).  "[E]xamples

14

of inability to perform fine and gross movements effectively include . . . the inability to prepare a simple meal and feed oneself, [and] the inability to take care of personal hygiene."  *See id.* Substantial evidence indicates Plaintiff did not experience "an extreme loss of function of both upper extremities."  *See* 20 C.F.R. § Pt. 404, subpt. P, App. 1, 1.00(B)(2)(c); *accord* T. at 14 (concluding the evidence "does not demonstrate" Plaintiff had "difficulty in performing fine and gross motor movements").

For example, Dr. Puri and the state agency medical consultants did not identify an extreme loss of function in Plaintiff's upper extremities.  (*See* T. at 73-77, 89-93, 516-20.) Plaintiff's medical records document no such loss either.  *See generally id.* at 365-508, 523-610. Rather, they indicate she had motor strength and full range of motion in both of her upper extremities.  *See id.* at 391, 396, 402, 493-94, 499, 505, 540, 550, 560.  Moreover, according to Plaintiff, she was capable of preparing simple meals and managing her personal hygiene.  *See id.* at 45-46, 73, 76, 233, 235, 517.  These activities are inconsistent with a finding that Plaintiff had "an extreme loss of function of both upper extremities."  *See* 20 C.F.R. § Pt. 404, subpt. P, App. 1, 1.00(B)(2)(c).

Second, as to listing 1.04, substantial evidence supports the ALJ's conclusion that "the medical evidence does not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required under listing 1.04 for disorders of the spine." (T. at 14.)  To establish listing 1.04, Plaintiff must demonstrate that she suffered nerve root or spinal cord compromise, and all of the elements of either paragraph A, B, or C.  *See* 20 C.F.R. §§ Pt. 404, subpt. P, App. 1, 1.04(A)-(C) (effective until April 2, 2021); *see generally Debra E. v. Comm'r of Soc. Sec.*, No. 6:18-CV-00513 (NAM), 2019 WL 4233162, at *6 (N.D.N.Y. Sept. 6, 2019) (explaining that to satisfy listing 1.04, an individual must demonstrate compromise of a

15

nerve root or the spinal cord, and "one of three criteria: (A) evidence of nerve root compression; (B) spinal arachnoiditis; and (C) lumbar spinal stenosis resulting in pseudoclaudication."). Even assuming Plaintiff suffered nerve root or spinal cord compromise, substantial evidence does not support a finding that she satisfied the elements of paragraphs A, B, or C.

Plaintiff cannot satisfy paragraph A because she cannot demonstrate she experienced "motor loss . . . accompanied by sensory or reflex loss." *See* 20 C.F.R. § Pt. 404, subpt. P, App. 1, 1.04(A); *see generally Bell*, 2021 WL 4248845, at *8 ("The Listing defines 'motor loss' as 'atrophy with associated muscle weakness' or 'muscle weakness.' Appendix 1 further specifies that 'significant motor loss' may be shown by an 'inability to walk on the heels or toes, to squat, or to arise from a squatting position.'") (citing 20 C.F.R. §§ Pt. 404, subpt. P, App. 1, 1.00(E)(1), 1.04(A)). As explained above, Plaintiff had no issues ambulating, she had no difficulty standing from a seated position, and she did not experience a loss of motor function or range of motion in her upper extremities. (*See* T. at 73-77, 89-93, 365-508, 516-20, 523-610.) Moreover, Plaintiff's representations about her activities of daily living (i.e., driving, preparing simple meals, washing dishes, exercising, showering, grooming, and dressing, ) are inconsistent with a finding of motor loss accompanied by sensory or reflex loss. *See id.* at 33-34, 45-46, 73, 76, 233, 235, 517. Substantial evidence accordingly supports the ALJ's conclusion that "the medical evidence does not establish the requisite evidence of nerve root compression . . . as required under listing 1.04 for disorders of the spine." (T. at 14; *see, e.g.*, *Debra E.*, 2019 WL 4233162, at *7 ("Here, the Court finds that there is no medical evidence of 'motor loss accompanied by sensory or reflex loss,' as required by Listing 1.04(A).").)

Plaintiff cannot satisfy paragraph B because she cannot demonstrate that she experienced spinal arachnoiditis. *See* 20 C.F.R. § Pt. 404, subpt. P, App. 1, 1.04(B); *see generally Debra E.*,

2019 WL 4233162, at *6. "Spinal arachnoiditis is a condition characterized by adhesive thickening of the arachnoid which may cause intermittent ill-defined pain and sensory dysesthesia, and may cause neurogenic bladder or bowel incontinence when the cauda equina is involved." *See* 20 C.F.R. § Pt. 404, subpt. P, App. 1, 1.00(K)(2)(a) (effective until April 2, 2021). It must be "confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours." *See* 20 C.F.R. § Pt. 404, subpt. P, App. 1, 1.04(B). Plaintiff failed to identify an operative note or pathology report documenting spinal arachnoiditis, and the undersigned has identified no such evidence in the record. (*See generally* Dkt. Nos. 9, 16; T. at 365-508, 523-610.) Substantial evidence accordingly supports the ALJ's conclusion that "the medical evidence does not establish the requisite evidence of . . . spinal arachnoiditis . . . as required under listing 1.04 for disorders of the spine." (T. at 14; *see, e.g.*, *Debra E.*, 2019 WL 4233162, at *7.)

Finally, Plaintiff cannot satisfy paragraph C because she cannot demonstrate she was unable to ambulate effectively. *See* 20 C.F.R. § Pt. 404, subpt. P, App. 1, 1.04(C). To satisfy listing 1.04(C), Plaintiff must demonstrate she suffered: (1) nerve root or spinal cord compromise, (2) lumbar spinal stenosis with pseudoclaudication, (3) chronic nonradicular pain and weakness, and (4) an inability to ambulate effectively. *See id.*; *see also Figueroa v. Saul*, No. 18-CV-4534 (JLC), 2019 WL 4740619, at *21 (S.D.N.Y. Sept. 27, 2019). However, as explained above, Plaintiff was able to ambulate effectively. (*See* T. at 73-77, 89-93, 391, 396, 402, 426, 429, 431, 433, 436, 440, 492, 494, 516-20, 525, 527, 549, 559, 586, 596, 599, 603.) Substantial evidence accordingly supports the ALJ's conclusion that "the medical evidence does not establish the requisite evidence of . . . lumbar spinal stenosis as required under listing 1.04

17

for disorders of the spine."  (T. at 14; *see, e.g.*, *Figueroa*, 2019 WL 4740619, at *21 (concluding

the claimant did not meet listing 1.04(C) because "the record fails to establish an inability to

ambulate effectively") (collecting cases); *Bonilla Mojica v. Berryhill*, 397 F. Supp. 3d 513, 531

(S.D.N.Y. 2019) (same); *Urbanak v. Berryhill*, No. 17-CIV-5515 (CM) (HBP), 2018 WL

3750513, at *22 (S.D.N.Y. July 18, 2018), *report and recommendation adopted*, 2018 WL

3745667 (S.D.N.Y. Aug. 7, 2018) (same).)

      In sum, substantial evidence supports the ALJ's conclusion that Plaintiff did not satisfy

listings 1.02 and 1.04.  (*See* T. at 14.)  The ALJ accordingly did not err in concluding Plaintiff's

impairments did not meet or medically equal listings 1.02 or 1.04.  *See id.*

> **B.**     **The VE's Testimony**

      Plaintiff claims the ALJ erred in failing to "use to the full testimony of the vocational

expert."  (Dkt. No. 16 at 16.)  She avers the VE's testimony "supported a finding of disability,"

yet the ALJ failed to "explain why he did not agree with the vocational expert's testimony."  *Id.*

Plaintiff's argument here is unclear and imprecise.  (*See generally* Dkt. Nos. 9, 16.)

Nonetheless, it appears as though Plaintiff's argument relies on a fundamental misunderstanding

of the ALJ's hypothetical question, VE Eskandar's testimony, and the residual functional

capacity ("RFC") determination in this case.  (*Compare* Dkt. No. 16 at 16, *with* T. at 14, 55-56.)

      At the hearing, the ALJ asked VE Eskandar whether Plaintiff would be able to perform

past relevant work given the following RFC: Plaintiff is limited to a sedentary exertional level,

"but is also limited to frequent fingering and handling, frequent reaching, occasional stooping

and crouching, no kneeling or crawling, no ladders, ropes or scaffolds, no unprotected heights,"

and she should "avoid concentrated exposure to dust, fumes, gases and other pulmonary irritants,

and should avoid extreme temperatures."  (*See* T. at 54-56 (modifying hypothetical one with a

sedentary exertional level).)  VE Eskandar answered in the affirmative, explaining Plaintiff

would be capable of performing her most recent nursing job "as [it] is typically performed in the

national economy."  *See id.* at 56.  The ALJ adopted this RFC in his decision, and concluded—

consistent with VE Eskandar's testimony—that Plaintiff "could perform the past relevant work

as described in the Dictionary of Occupational Titles [#079.262-010]."  *Id.* at 17.

Plaintiff does not challenge the ALJ's RFC determination, nor does she challenge VE

Eskandar's testimony.  (*See* Dkt. Nos. 9, 16.)  Absent such challenges, the Court is left with the

ALJ's undisputed RFC determination and VE Eskandar's undisputed testimony that an

individual with that RFC and Plaintiff's work history could perform past relevant work.  (*See* T.

at 56.)  The undersigned accordingly finds no error with the ALJ's conclusion that Plaintiff is

capable of performing past relevant work.  *See id.* at 17.

### C.    Additional Medical Opinion Testimony

Plaintiff claims the ALJ should have "considered the testimony of a medical expert to

assist in evaluating whether the Plaintiff met or equaled any of the listings."  (Dkt. No. 16 at 16.)

In support of this proposition, Plaintiff avers "Social Security Administration's Hallex I-2-5 30

through 40 and POMS mandate[] that the ALJ obtain a medical expert to see if the Plaintiff

meets or equals a listed impairment."  *See id.*  The undersigned disagrees.

First, under SSR 17-2P, "[i]f an adjudicator at the hearings or AC level believes that the

evidence does not reasonably support a finding that the individual's impairment(s) medically

equals a listed impairment, [the Commissioner does] not require the adjudicator to obtain ME

evidence or medical support staff input prior to making a step 3 finding that the individual's

impairment(s) does not medically equal a listed impairment."  SSR 17-2P, 2017 WL 3928306, at

*4; *see also Mastrobattista v. Comm'r of Soc. Sec.*, No. 5:15-CV-1253 (GTS) (WBC), 2016 WL

7669503, at *6 (N.D.N.Y. Dec. 14, 2016), *report and recommendation adopted*, 2017 WL 90364 (N.D.N.Y. Jan. 10, 2017) (explaining "the Regulations do not require that the ALJ seek an opinion of a medical expert at step three."). The ALJ was accordingly under no obligation to call a medical expert at the hearing. *See* SSR 17-2P, 2017 WL 3928306, at *4.

Second, the Hearings, Appeals, and Litigation Law Manual ("HALLEX") does not support Plaintiff's argument either. *See generally* HALLEX I-2-5-34(A)(1).[7] Under HALLEX I-2-5-34(A)(1), and ALJ is only required to obtain a medical expert opinion in three circumstances: (i) "[t]he Appeals Council or Federal court ordered an ME opinion," (ii) "[t]here is a question about the accuracy of medical test results reported, requiring the evaluation of background medical test data," or (iii) "[t]he ALJ is considering finding that the claimant's impairment(s) medically equals a listing." *See id.* None of these circumstances applied here.

Finally, state agency medical consultant Dr. Chen evaluated the applicability of listing 1.04 before the hearing. (*See* T. at 89; *see generally* 20 C.F.R. § 404.1526(e)(1) ("In cases where

---

[7] "The HALLEX is a manual that provides the Social Security Administration with a set of guidelines and procedures and district courts within the Second Circuit have found that HALLEX policies are not regulations and therefore not deserving of controlling weight." *Louisiana S. v. Commissioner of Soc. Sec.*, No. 3:20-CV-00130 (BKS) (CFH), 2021 WL 911691, at *5 (N.D.N.Y. Mar. 10, 2021); *see generally Timothy B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-01668 EAW, 2022 WL 303792, at *5 (W.D.N.Y. Feb. 2, 2022) ("While the procedures in HALLEX are not binding precedent, the ALJ's failure to follow the guidelines, as here, is not wholly irrelevant"); *Janet R. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1100 CJS, 2021 WL 1054369, at *6 (W.D.N.Y. Mar. 19, 2021) (explaining "the ALJ's failure to follow the Hallex's direction . . . reinforces the Court's conclusion that she abused her discretion"); *Shari L. v. Saul*, No. 1:19-CV-851 (ATB), 2020 WL 3971510, at *3 n.1 (N.D.N.Y. July 14, 2020) ("Although the Second Circuit has not specifically ruled on [whether the HALLEX is binding], it continues to rely on HALLEX policies to determine whether substantial evidence supports the Commissioner's underlying decision, and whether the Commissioner applied the correct legal standards."); *Stires v. Comm'r of Soc. Sec.*, No. 2:17-CV-811, 2018 WL 3237673, at *7 (S.D. Ohio July 3, 2018), *report and recommendation adopted,* No. 2:17-CV-811, 2018 WL 4203451 (S.D. Ohio Sept. 4, 2018) ("Where, however, a claimant demonstrates that the ALJ's departure from the procedures set forth in HALLEX causes sufficient prejudice, remand may be required.") (collecting cases).

the State agency or other designee of the Commissioner makes the initial or reconsideration disability determination, a State agency medical or psychological consultant or other designee of the Commissioner . . . has the overall responsibility for determining medical equivalence.").) Through the pre-hearing Disability Determination Explanation, Dr. Chen evaluated Plaintiff's impairments under listing 1.04 and concluded Plaintiff had not satisfied the listing. (T. at 89.) So, to the extent some medical source should have opined on the applicability of the listings, Dr. Chen did, and he concluded Plaintiff did not satisfy listing 1.04. *See id.*

In sum, the ALJ was not required to "obtain a medical expert to see if the Plaintiff meets or equals a listed impairment." (*See* Dkt. No. 16 at 16.) Neither the regulations nor the HALLEX Manual required it. *See* SSR 17-2P, 2017 WL 3928306, at *4; HALLEX I-2-5-34(A)(1). In any event, state agency medical consultant Dr. Chen reviewed the applicability of listing 1.04 before the hearing, and he concluded it was inapplicable. (*See* T. at 89.)

## IV.    CONCLUSION

For the foregoing reasons, the undersigned concludes the ALJ's decision was based on the correct legal standards and substantial evidence supports his decision.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Plaintiff's motions for judgment on the pleadings (Dkt. Nos. 9, 16) be **DENIED**; and it is further

**RECOMMENDED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) be **GRANTED**; and it is further

**RECOMMENDED** that the ALJ's decision denying Plaintiff disability benefits be **AFFIRMED**; and it is further

**ORDERED** that the Clerk of the Court serve copies of this Report-Recommendation on the parties in accordance with the Local Rules.  Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.

*Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:        September 2, 2022
              Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

22